REGINALD T. JOYNER AND JANE DUNCAN MILLER, AS TRUSTEES OF THE
TRUST UNDER THE WILL OF DAVID CROCKETT DUNCAN v. BESSIE LEE DUN-
CAN, EDWIN DUNCAN, JR., JANE DUNCAN MILLER, EDWIN DUN-
CAN, III, KATHERINE DUNCAN WOODRUFF, JANE LEE KING,
REGINALD T. JOYNER AND JANE DUNCAN MILLER, AS ADMINISTRATORS,
C.T.A. OF THE WILL OF EDWIN DUNCAN, SR., KATHRYN K. HATFIELD,
GUARDIAN AD LITEM FOR JOSEPH DUNCAN KING, A MINOR, BESSIE DUNCAN
MILLER, A MINOR, AND THE UNBORN CHILDREN OF EDWIN DUNCAN, JR. AND JANE
DUNCAN MILLER, AND SAMUEL C. EVANS, JR., GUARDIAN AD LITEM FOR THE
UNASCERTAINED HEIRS OF EDWIN DUNCAN, III, KATHERINE DUNCAN WOODRUFF,
JANE LEE KING, JOSEPH DUNCAN KING, BESSIE DUNCAN MILLER, AND OF ANY UN-
BORN CHILDREN OF JANE DUNCAN MILLER AND EDWIN DUNCAN, JR., AND ANY
OTHER PERSONS, BORN OR UNBORN, HAVING OR CLAIMING AN INTEREST WHICH WOULD
BE AFFECTED BY THE DECLARATION IN THIS ACTION

No. 33

(Filed 1 April 1980)

1. Wills § 41— rule against perpetuities

No devise or grant of a future interest in property is valid unless the title
thereto must vest in interest, if at all, not later than twenty-one years, plus
the period of gestation, after some life or lives in being at the creation of the
interest, and for testamentary devises the period of time prescribed by the
rule begins to run at testator's death.

2. Wills § 41— contingent future interests—rule against perpetuities applicable

Contingent future interests must vest, if at all, within the period of the
rule against perpetuities.

3. Wills § 37— future interest subject to condition precedent

A future interest is contingent when it is subject to a condition precedent
(other than the natural expiration of the preceding estate) or when the interest
is owned by unascertained persons.

4. Wills § 35.1— vested estate and vested remainder—distinction

An estate is vested when there is either an immediate right of present en-
joyment or a present fixed right of future enjoyment, while a vested re-
mainder is a present fixed right in the remainderman to take possession upon
the natural termination of the preceding estate with no conditions precedent
imposed on the time for the remainder to vest in interest.

5. Wills § 41.1— trust income given to son, widow, grandchildren—no violation of
rule against perpetuities

There was no violation of the rule against perpetuities where testator
created a trust which (1) gave his son the net income from the trust, since that
was a gift of a present life income interest which expired on the death of the
son; (2) gave his son's widow a certain sum from the income of the trust after
the death of his son, since that was a vested remainder income interest for life
which was subject to no condition precedent save the natural termination of

Joyner v. Duncan

the preceding interest; and (3) gave to two named grandchildren who were alive at testator's death vested remainder income interests for life.

**6. Wills § 37 — future interest devised to class — vesting at testator's death**

When a future interest is devised by will to a class with no contingency other than the natural termination of any preceding interest and some members of the class are alive at the testator's death, then the gift is vested in those members of the class alive at testator's death subject to open to allow after-born members of the class to come in and take a vested interest until it is time for the roll to be called and the class to be closed, but the class gift must cease to be subject to open within the period of the rule against perpetuities.

**7. Wills § 41.1 — money to testator's grandchildren at specified ages — no violation of rule against perpetuities**

Language of testator's will that the trustee should pay to testator's grandchildren out of the corpus of the estate $5000 as each grandchild reached the age of 25 years and a like sum at ages 30, 35 and 40 gave testator's grandchildren a vested interest at birth subject to open with enjoyment postponed for each grandchild until he or she reached the ages 25, 30, 35 and 40, and the class gift therefore did not violate the rule against perpetuities.

**8. Wills § 41.1 — money to testator's great-grandchildren for college expenses — no violation of rule against perpetuities**

Where testator provided that each of his great-grandchildren should be given $1000 per year for his or her college education, provided the great-grandchild made passing grades and remained in school, testator was referring only to children born or to be born to his two grandchildren who were 24 and 14 years old at the time testator executed his will; since all possible members of the class of great-grandchildren intended by the testator would be born, if at all, within the lifetime of a life in being at testator's death (the two grandchildren) and since the interest given to the great-grandchildren was vested upon birth with enjoyment postponed until they went to college and subject to divestment if they did not go to college and make passing grades, there was no violation of the rule against perpetuities.

**9. Wills § 41.1 — remainder of trust to be distributed to great-grandchildren — subclass exception inapplicable — no violation of rule against perpetuities**

Where testator's will provided that each of his great-grandchildren was to receive one-half of his interest in the remainder of a trust when he reached age 25, and final distribution of all remainder interests was to occur when the youngest great-grandchild reached age 25 and the grandchildren were deceased, the subclass exception was not applicable, since testator did not separate the gift into subclasses with devises to take effect at different times upon the respective deaths of the life tenants; but the gift nevertheless did not violate the rule against perpetuities since the remainder interest vested at birth of the great-grandchildren (subject to open until the class was closed), and any great-grandchildren could not possibly be born after the death of the grandchildren, who were lives in being at testator's death, plus any period of gestation.

**10. Wills § 35.4— remainder to great-grandchildren or heirs—remainder inheritable**

On the death of a remainderman who holds a vested interest in a trust, the interest of that remainderman will pass to his heirs at law since vested estates are inheritable and devisable; language in testator's will that final distribution of the remainder in a trust should be made when the youngest of his great-grandchildren reached 25 years of age and "that at that time each great-grandchild or his or her heirs shall receive per capita the remainder of the distributive share of my estate in full, and each great-grandchild or the heir or heirs of any deceased great-grandchild shall be made equal as to the distributive share of this trust estate" did not create a contingency or a gift or limitation over, but merely denoted the inheritable quality of the vested remainder.

**11. Wills § 4.1— rule against perpetuities—wait and see doctrine explained**

The doctrine of wait and see prescribes, in a case involving a will or testamentary trust, that events will be viewed as they actually happen rather than as they hypothetically could have happened as of testator's death; if no violation in fact occurred, then, under the wait and see approach, there is no perpetuities violation although, hypothetically, at the time of testator's death, a violation could have occurred.

ACTION for declaratory judgment pursuant to G.S. 1-253 *et seq.* for construction of a will before *McConnell, J.* at the 13 August 1979 Session of ALLEGHANY County Superior Court.

Testator, David Crockett Duncan, died 19 November 1953. He was survived by his son, Edwin Duncan, Sr. (born—25 June 1905, died—7 October 1973); his daughter-in-law, Bessie Lee Duncan; his two grandchildren, Edwin Duncan, Jr. (born—14 July 1927) and Jane Duncan Miller (born—12 September 1937); and two great-grandchildren (both born of Edwin Duncan, Jr.), Edwin Duncan, III (born—18 April 1952) and Katherine Duncan Woodruff (born—8 January 1951). Subsequent to testator's death, three great-grandchildren, Jane Lee King (born—10 November 1960), Joseph Duncan King (born—3 January 1962), and Bessie Duncan Miller (born—10 September 1971), were born of testator's granddaughter, Jane Duncan Miller.

Testator set up a trust in his will. The trustees are Reginald T. Joyner and Jane Duncan Miller. They have brought this action for a determination as to whether any of the provisions of the trust violate the rule against perpetuities. Defendants in this action are testator's daughter-in-law; two grandchildren; five great-grandchildren; Reginald T. Joyner and Jane Duncan Miller as

administrators C.T.A. of the will of Edwin Duncan, Sr.; Kathryn K. Hatfield as guardian ad litem for the two minor great-grandchildren (Joseph Duncan King and Bessie Duncan Miller) and any unborn children of Edwin Duncan, Jr. and Jane Duncan Miller; and Samuel C. Evans, Jr. as guardian ad litem for any unborn children of Edwin Duncan, Jr. and Jane Duncan Miller, the unascertained heirs of the five great-grandchildren and "any other unborn or unknown persons having or claiming an interest which would be affected by the declaration in this action."

The trial judge upheld the validity of the entire trust and found no violations of the rule against perpetuities. We allowed the joint petition for discretionary review pursuant to G.S. 7A-31 prior to determination by the Court of Appeals.

The relevant provisions of the testamentary trust that are the subject matter of this action and any other facts necessary to the decision of this case will be related in the opinion.

*W. G. Mitchell for defendant-appellants Bessie Lee Duncan, Edwin Duncan, Jr., Jane Duncan Miller and Reginald T. Joyner and Jane Duncan Miller as administrators C.T.A. of the will of Edwin Duncan, Sr.*

*Hayes, Hayes and Evans by Samuel C. Evans acting as guardian ad litem.*

*Sam J. Ervin, Jr. and Womble, Carlyle, Sandridge & Rice by Leon L. Rice, Jr., and Elizabeth L. Quick for plaintiff-appellees Reginald T. Joyner and Jane Duncan Miller as trustees of the testamentary trust of David Crockett Duncan.*

*Sam J. Ervin, Jr. and Katherine D. Woodruff for defendant-appellees Edwin Duncan, III, Katherine Duncan Woodruff and Jane Lee King.*

COPELAND, Justice.

[1] No devise or grant of a future interest in property is valid unless the title thereto must vest in interest, if at all, not later than twenty-one years, plus the period of gestation, after some life or lives in being at the creation of the interest. *Parker v. Parker*, 252 N.C. 399, 113 S.E. 2d 899 (1960); *McPherson v. First & Citizens National Bank of Elizabeth City*, 240 N.C. 1, 81 S.E. 2d

386 (1954); *McQueen v. Branch Banking & Trust Co.*, 234 N.C. 737, 68 S.E. 2d 831 (1952). For testamentary devises, the period of time prescribed by the rule begins to run at testator's death. Simes & Smith, *The Law of Future Interests*, § 1226 (2d ed. 1956).

[2] Although the language in some of our cases may be unclear as to the following portion of the rule, Link, *The Rule Against Perpetuities in North Carolina*, 57 N.C.L. Rev. 727, 762, 767 (1979) and cases cited therein, the rule requires that contingent future interests must vest, *if at all*, within the period of the rule. In other words, it is not required that the interest must vest within the perpetuities period. What is required is that the interest must be certain to *either vest or fail* within that period. Thus, if the interest should happen to vest, that vesting must occur within the period of the rule, and if there is *any possibility*, when the interest is created, that it may vest in interest at a remote time, then, under the rule, that interest is void. *Simes & Smith, supra*, § 1228; Bergin and Haskell, *Preface to Estates in Land and Future Interests*, pp. 185-86 (1966).

The rule does not apply to limit the duration of a trust. It simply applies to the time when legal title must vest in the trustee and the time when all beneficial or equitable interests created in the trust vest in the beneficiaries even though the duration of those vested interests may extend beyond the period of the rule. *McQueen v. Branch Banking & Trust Co., supra.*

[3, 4] The rule applies to contingent future interests. A future interest is contingent when it is subject to a condition precedent (other than the natural expiration of the preceding estate) or when the interest is owned by unascertained persons. *Wachovia Bank & Trust Co. v. Schneider*, 235 N.C. 446, 70 S.E. 2d 578 (1952). An estate is vested when there is either an immediate right of present enjoyment or a present fixed right of future enjoyment. *Wachovia Bank & Trust Co. v. Taylor*, 255 N.C. 122, 120 S.E. 2d 588 (1961); *Parker v. Parker, supra*. A vested remainder is a present fixed right in the remainderman to take possession upon the natural termination of the preceding estate with no conditions precedent imposed on the time for the remainder to vest in interest. *Priddy & Co. v. Sanderford*, 221 N.C. 422, 20 S.E. 2d 341 (1942). The rule is concerned solely with the time for vesting

in interest of estates and not with the time the estates will vest in possession and enjoyment. *Parker v. Parker, supra.*

The essence of the rule in a will case is the search for an answer to the following question: Must the contingent future interest in question vest (if it ever does vest) within the lifetime of some one or more people who were alive at testator's death (plus the 21 year period and any period of gestation)? These lives in being at testator's death are referred to as the measuring life or lives for the interest in question. Frequently the measuring life or lives will be the beneficiary or beneficiaries of an interest in the trust or will that precedes the interest in question. If there is any possibility that the gift will vest in interest in the lifetime of someone who was not a life in being at testator's death and more than 21 years after the death of all possible measuring lives plus any period of gestation, then the interest vests too remotely and is void because it is in violation of the rule against perpetuities.

[5] The testamentary trust that is the subject matter of this action is set forth in Article III of testator's will. The first provision of Article III is as follows:

"It is my will and desire that all of my property of every kind and nature remaining after the payment of taxes, funeral expenses, just debts, and cost of administration shall be and constitute a TRUST ESTATE, and that Edwin Duncan shall be trustee of my trust estate as long as he shall live or is able to act, and upon his death or inability to act, that The Northwestern Bank, Inc. shall be the trustee of my trust estate and shall succeed to all the powers and duties granted unto Edwin Duncan, Trustee; therefore, I give, devise, and bequeath all of my property remaining in my estate or in the hands of my Executor unto Edwin Duncan, Trustee, and upon his death to The Northwestern Bank, Inc., as Trustee, to be administered by him or it in the following way and manner:

1. I direct that my Trustee shall pay the net income so derived from my trust estate annually unto Edwin Duncan; however, the said Edwin Duncan shall have the right and privilege of refusing to accept the annual net income of my estate and his decision in that respect shall be final and controlling. In the event he does not elect to accept the net income or any part of it derived from my trust estate annually,

then the net income or the part he does not care to accept shall be added to the corpus and principal of this trust estate."

There is no problem with this interest since it was a gift of a *present* life income interest which expired on the death of Edwin Duncan, Sr. on 7 October 1973.

The second section of the trust provides that:

"2. Upon the death of Edwin Duncan, I direct that my Trustee shall pay out of the net income derived from my trust estate unto Bessie Lee Duncan, the widow of Edwin Duncan, for the remainder of her life or until she remarries, if necessary, the sum of $150.00 per month provided she does not have sufficient income from other sources to maintain and support her. That the remainder of the net income of my trust estate shall be paid equally unto Edwin Duncan, Jr. and Jane Cannon Duncan, and upon the death of Bessie Lee Duncan, that the net income derived from my trust estate shall be paid unto Edwin Duncan, Jr. and Jane Cannon Duncan equally; however, should Edwin Duncan, Jr. or Jane Cannon Duncan elect not to accept the net income or a part of the income, that the same shall be added to the corpus or principal of this trust estate each year such election is made. Provided, further, in the event of the death of Edwin Duncan, Jr. or Jane Cannon Duncan during the life of this trust, that the net income derived from this trust estate going to such deceased grandchild shall be paid *per stirpes* to the child or children of said grandchild."

The interest of Bessie Lee Duncan is a vested remainder income interest for life. It is subject to no condition precedent save the natural termination of the preceding interest. *Parker v. Parker, supra; Wachovia Bank & Trust Co. v. Taylor, supra; Priddy & Co. v. Sanderford, supra.* Since the remainder was vested at testator's death, there is no problem with the rule against perpetuities. If she remarries, her income interest will terminate. This condition subsequent will serve merely to divest a vested interest and raises no perpetuities problem in this case. *See, Elmore v. Austin,* 232 N.C. 13, 59 S.E. 2d 205 (1950).

Edwin Duncan, Jr. and Jane Cannon Duncan (now Jane Duncan Miller) also have vested remainder income interests for life. These income interests were not given to testator's grandchildren as a class. They were given to each of the two named grandchildren who were alive at testator's death; thus, there is no perpetuities violation. *Fuller v. Hedgpeth*, 239 N.C. 370, 80 S.E. 2d 18 (1954). The gift over of the income interest to "be paid *per stirpes* to the child or children of said grandchild" does not violate the rule against perpetuities. That gift over cannot possibly occur at a remote time within the meaning of the rule against perpetuities, since it will occur, if at all, for the children of each of the two named grandchildren, upon the death of each grandchild. The two named grandchildren were lives in being at testator's death and therefore, they are the measuring lives for the respective gifts over to their children. There is no possibility that the gift over will occur within the lifetime of someone who was not a life in being at testator's death since the children of the two named grandchildren cannot be born later than the death of their parent (plus any period of gestation) and their parents were lives in being at testator's death.

The third section of the trust provides that:

"3. I direct and empower the Trustee of my trust estate to pay unto my grandson, Edwin Duncan, Jr. and my granddaughter, Jane Cannon Duncan, or to any other children born to Edwin Duncan out of the corpus of my estate the sum of $5,000.00 as each grandchild shall reach the age of 25 years, and a like sume of $5,000.00 to each grandchild upon reaching the age of 30 years; and a like sum of $5,000.00 to each grandchild upon reaching the age of 35; and a like sum of $5,000.00 to each grandchild upon reaching the age of 40. Provided any payment made by me as herein provided during my lifetime to any grandchild reaching the age of 25 or any other age shall be counted as an advancement to such grandchild against the provisions herein contained. Provided, however, that if any grandchild be not competent or capable in the opinion of my Trustee to receive any of the $5,000.00 payments as herein provided, then I direct and instruct my Trustee to use such proceeds to purchase a home or farm for such grandchild; provided that if the purchase of a home or farm is made by the Trustee under the provisions of this

clause, that the deed for such property shall be made to such grandchild for life and the remainder to his or her heirs in fee simple."

This provision is the one instance in which testator made a class gift to his grandchildren since he provided that the money was to be paid to his "grandson, Edwin Duncan, Jr. and [his] granddaughter, Jane Cannon Duncan, *or to any other children born to Edwin Duncan. . . .*" [Emphasis added.] This class gift to grandchildren was made with respect to this special gift of $5,000.00 to be paid as each grandchild reaches the designated ages.

[6] When a future interest is devised by will to a class with no contingency other than the natural termination of any preceding interest and some members of the class are alive at the testator's death, then the gift is vested in those members of the class alive at testator's death subject to open to allow after-born members of the class to come in and take a vested interest until it is time for the roll to be called and the class to be closed. *Parker v. Parker, supra; Mason v. White*, 53 N.C. 421 (1862). The rule against perpetuities applies to such class gifts. *Simes & Smith, supra*, § 1232. Even though the interest is vested, it is subject to open. As to those members of the class born after testator's death that the class opens to receive, there is a condition precedent to their becoming members of the class and that is the contingency of birth. In other words, there are unascertained persons with respect to a future interest and the rule applies. Both minimum and maximum membership in a class must be determined within the perpetuities period. Simply put, the class gift must cease to be subject to open within the period of the rule. *Simes & White, supra*, § 1265.

In *Wachovia Bank & Trust Co. v. Taylor, supra*, the gift was to testator's widow for life, then to his two named daughters for life, then to his grandchildren. Testator had five grandchildren living at his death. Since the interest of the grandchildren was vested subject to open at testator's death, minimum membership in the class of grandchildren was determined at testator's death. If any grandchild predeceased the life tenants, their vested interest would have passed to their estate. Maximum membership in the class would be determined at the death of the survivor of

the life tenants since the class would have to close at that time in order for distribution of the interests to occur. Both minimum and maximum membership was determined within the period of the rule since the life tenants were lives in being at testator's death. They were the measuring lives for the interest to the grandchildren and all grandchildren would have to be born, if at all, within the lifetime of their mother (the measuring life for their interests). Thus, there was no perpetuities violation.

[7] The issue with respect to the class gift in Section 3 of this will is whether reaching the designated ages is a condition precedent to the vesting in interest of the estate or whether reaching those ages merely prescribes the time when a vested interest (with possession and enjoyment postponed) is to actually be paid to the beneficial interest holder. If the former is the case, then the gift is violative of the rule because a grandchild may not be born and live to age 25, 30, 35, or 40 within lives in being *plus 21 years*. If the latter is the case, then the gift is valid, even though it is a class gift, because then the only contingency to the vesting in interest of the gift is the birth of "any other children of Edwin Duncan." Obviously, such births would have to occur, if at all, within the lifetime of Edwin Duncan who was a life in being at testator's death and therefore, he was the measuring life for this gift to his children.

The law favors the early vesting of estates. *Roberts v. Northwestern Bank*, 271 N.C. 292, 156 S.E. 2d 229 (1967). In *Kale v. Forrest*, 278 N.C. 1, 178 S.E. 2d 622 (1971), it was held that a provision that the share of testator's estate going to his son "shall be put in trust for him and he shall get the interest from this when he reaches 60 years of age" was a gift of a vested remainder with possession and enjoyment postponed until age 60. In *Wachovia Bank & Trust Co. v. Taylor, supra*, it was provided that upon the death of the last surviving life tenant, "their share is to be divided equally between their children when they reach the age of twenty-five years." This Court held that testator's grandchildren took a vested remainder subject to open with the right of partition postponed until age 25. In Clobberie's Case, 2 Vent. 342, 86 Eng. Rep. 476 (1677), it was held that a provision in a gift that it was to be paid at a certain age indicated that the gift vested at testator's death with only the time of payment postponed.

Here, the provision is that the trustee is "*to pay* unto my [grandchildren] out of the corpus of my estate the sum of $5,000.00 *as each grandchild shall reach the age* of 25 years [and a like sum at ages 30, 35 and 40]." We construe this language as giving testator's grandchildren a vested interest at birth subject to open with enjoyment postponed for each grandchild until he or she reaches ages 25, 30, 35, and 40. Minimum membership in this class was determined at testator's death since the two grandchildren alive at that time had a vested right to receive $5,000.00 with enjoyment postponed until they reached the prescribed ages. If any grandchild were to die before reaching any of the prescribed ages, their right is inheritable since it is vested and therefore, the interest would pass to their estate. *Kale v. Forrest, supra.* Viewed at the time of testator's death, maximum membership in the class would be determined at the death of Edwin Duncan, Sr. All of his children would have to be born not later than his death plus any period of gestation. Since he was the measuring life for this gift to his children, there was no violation of the rule against perpetuities.

We further note that testator provided that in the event of an incompetent grandchild, the $5,000.00 payments were to be used to purchase a home or farm with the deed making the gift go to "such grandchild for life and the remainder to his or her heirs in fee simple." Under the Rule in Shelley's case, the grandchild takes a fee simple absolute if this eventuality occurs. *Whitley v. Arenson*, 219 N.C. 121, 12 S.E. 2d 906 (1941); *Williams v. Norfolk Southern R. Co.*, 200 N.C. 771, 158 S.E. 473 (1931).

[8]   The next provision of the trust is as follows:

"4. I direct and empower my Trustee to provide for the education of my great-grandchildren in an accredited college as follows: To pay for each great-grandchild the sum of $1,000.00 per year not to exceed four years for his or her college education and living expenses, provided such great-grandchild shall make passing grades during his or her scholastic career, and in the event any great-grandchild fails to make passing grades or does not remain in school, then such great-grandchild shall cease to have expended for him or her the said $1,000.00 per year. In the event any great-grandchild shall cease to be enrolled in an accredited school

or fails to make passing grades, the $1,000.00 per year not used for educational purposes on behalf of such great-grandchild shall remain in the corpus of this trust."

A condition will be deemed to be a condition subsequent (which will divest a vested interest) rather than a condition precedent to vesting unless the testator's language forbids such a construction. *Elmore v. Austin, supra.* Therefore, under the language in Section 4 we hold that the great-grandchildren have a vested interest at birth to receive the monetary gifts for their college education subject to divestment if the great-grandchild does not go to college and make passing grades. Since the interest vests in each great-grandchild at birth and this is a gift to a class (great-grandchildren), the issue is whether, at testator's death, there was any possibility of a great-grandchild being born at a time beyond that allowed by the rule against perpetuities. If so, the gift fails. *Simes & White, supra,* § 1265. However, before this issue can be addressed, we have the preliminary issue of what group of people testator intended to be referring to when he used the term, "great-grandchildren."

When a will is subject to two constructions, one which results in an illegal perpetuity and another which renders the will valid, the latter construction is preferred. *Poindexter v. Wachovia Bank & Trust Co.,* 258 N.C. 371, 128 S.E. 2d 867 (1963). It is presumed that testator intended a valid disposition of his property and did not intend to dispose of it in a manner violative of the rule against perpetuities. *Clarke v. Clarke,* 253 N.C. 156, 116 S.E. 2d 449 (1960); *Elledge v. Parrish,* 224 N.C. 397, 30 S.E. 2d 314 (1944).

It is the duty of the Court to construe the provisions in a will so as to discover the intent of the testator and to give effect to it if it is not in contravention of some established rule of law or public policy. *Citizens National Bank v. Grandfather Home for Children, Inc.,* 280 N.C. 354, 185 S.E. 2d 836 (1972). Such intention is to be determined by an examination of the will, in its entirety, and in light of all surrounding facts and circumstances known to testator. *Id.*

Where there is ambiguity or uncertainty the Court is to take into consideration the established rules for construction of a will. *Wachovia Bank & Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246

(1956). Effect must be given to each clause, phrase and word, if a reasonable construction of the will so permits. Each string should give its sound. *Morris v. Morris*, 246 N.C. 314, 98 S.E. 2d 298 (1957).

The intent of the testator is determined from the entire instrument so as to harmonize, if possible, provisions which would otherwise be inconsistent. *Olive v. Biggs*, 276 N.C. 445, 173 S.E. 2d 301 (1970). A phrase should not be given a significance which clearly conflicts with the evident intent of the testator as gathered from the four corners of the will and the Court will adopt that construction which will uphold the will in all its parts if such course is consistent with established rules of law and the intention of the testator. *Johnson v. Salsbury*, 232 N.C. 432, 61 S.E. 2d 327 (1950). However, where provisions are irreconcilably in conflict, then the last expression of intent will ordinarily prevail. *Poindexter v. Wachovia Bank & Trust Co., supra.* Apparent conflicts will be reconciled, if possible to do so consistent with testator's intent, and irreconcilable provisions will be resolved by giving effect to the general prevailing purpose of the testator. *Worsley v. Worsley*, 260 N.C. 259, 132 S.E. 2d 579 (1963).

> "There should be no mystique surrounding the class gift; any legal conclusions concerning a gift to a class, as distinguished from a gift to several individuals, should reflect what the [testator] . . . would have intended had he focused upon the problem." Bergin & Haskell, *supra* at pp. 139-40.

We cannot say that testator did not, under any circumstances, think of the possibility of after-born grandchildren (who could have had children who would be testator's great-grandchildren) since in section 3 of Article III of the will he made a gift to his two named grandchildren and "any other child born to Edwin Duncan." However, in section 2, testator provided for life income interests for his two named grandchildren and did not provide for any other possible grandchildren.

Testator executed his will on 1 January 1952. At that time, testator's son was approaching his forty-seventh birthday and had children who were ages twenty-four and fourteen. Of course, the law presumes that a man can have children as long as he is alive, but from the four corners of this will in this case and from all the surrounding facts and circumstances and after applying all of the

rules of construction set forth above, we do not believe that that is what this testator presumed, contemplated or intended. From a careful scrutiny of the entire will, we are convinced that when testator spoke of his great-grandchildren he was referring to children born or to be born to his two grandchildren, Edwin Duncan, Jr. and Jane Duncan Miller, and was not referring to any children born of a possible after-born grandchild. This is particularly true under sections 5 and 6 of the testamentary trust when testator made a gift of the remainder or corpus of the trust to his great-grandchildren to follow the life income interests that he gave only to his two named grandchildren in section 2 of the trust. Testator intended the same use of the term "great-grandchildren" in section 4 that he intended in sections 5 and 6. This interpretation of testator's intent is, of course, limited to the facts of this case and is based upon the particular language used in this will.

All of the children of Edwin Duncan, Jr. and Jane Duncan Miller would, of course, have to be born within the respective lifetimes of their parents. Since their parents were lives in being at testator's death, they can be and are the measuring lives for the gifts to their children under section 4 of Article III of testator's will. Since all possible members of the class of great-grandchildren intended by the testator will be born, if at all, within the lifetime of a life in being at testator's death and since the interest given to the great-grandchildren is vested upon birth with enjoyment postponed until they go to college and subject to divestment if they do not go to college and make passing grades, there is no violation of the rule against perpetuities.

[9] Sections 5 and 6 provide that:

"5. I direct and instruct my Trustee upon each great-grandchild reaching the age of 25 years to estimate and determine as nearly as possible the interest such great-grandchild would have in my trust estate, and to pay upon each great-grandchild reaching the age of 25, one-half of the estimated value of such great-grandchild's distributive share of this trust estate.

6. I direct that this trust estate shall cease and terminate and final distribution of the trust funds to be made at such time that all grandchildren are deceased, and the youngest of

my great-grandchildren shall be 25 years of age, and at that time each great-grandchild or his or her heirs shall receive per capita the remainder of the distributive share of my estate in full, and each great-grandchild or the heir or heirs of any deceased great-grandchild shall be made equal as to the distributive share of this trust estate. Provided, that any funds expended by my Trustee on behalf of any great-grandchild for college education as herein provided shall not be considered as a portion of the distributive share of such great-grandchild or great-grandchildren."

In short, each great-grandchild is to receive one-half of his interest in the remainder of this trust when he reaches age 25 and when the youngest great-grandchild reaches age 25 and the grandchildren are deceased, final distribution of all remainder interests is to occur.

The parties arguing for the validity of this provision of the trust ask the Court to apply the subclass exception to this class gift situation. This exception is available only when testator separates the gift into subclasses with devises to take effect at different times upon the respective deaths of the life tenants. *North Carolina National Bank v. Norris*, 21 N.C. App. 178, 203 S.E. 2d 657 (1974). When it operates, the exception would uphold the validity of gifts to those members of the class whose parents (the life tenants) were alive at testator's death since each parent would be the measuring life for the gift to his children and, as to them there would be no possibility of any remote after-born children in violation of the rule against perpetuities.

The subclass exception is simply not available in the case *sub judice*. Testator did not provide for successive remainders to take effect for each subclass of great-grandchildren upon the death of each grandchild. To the contrary, he unambiguously provided that each great-grandchild "shall receive *per capita* the remainder of the distributive share of my estate in full, and *each great-grandchild* or the heir or heirs of any deceased great-grandchild *shall be made equal as to the distributive share of this trust estate*." [Emphasis added.] Such a provision is the antithesis of a *per stirpes* gift or of a gift of successive remainders. *See*, Link, *supra* at 776. Furthermore, the subclass exception is unnecessary given our construction of the term "great-grandchildren" as used

by this testator in this will under section 4. The same construction applies under sections 5 and 6.

The remainder to the great-grandchildren is subject to no condition precedent other than the natural termination of the preceding life income interests. Therefore, the remainder interest to each great-grandchild vests at birth subject to open to allow after-born great-grandchildren to enter the class until it is time to close the class and call the roll. In providing that each great-grandchild is to take one-half of his remainder when he reaches age 25 and that final distribution is to occur when the youngest great-grandchild reaches age 25 and the grandchildren are deceased, testator was merely prescribing the times when a remainder that is vested in interest is to vest in possession and enjoyment. *Kale v. Forrest, supra; Roberts v. Northwestern Bank, supra; Wachovia Bank & Trust Co. v. Taylor, supra; Parker v. Parker, supra.*

The remainder vested in interest at birth (subject to open until the class is closed) which is within the perpetuities period since the children of Edwin Duncan, Jr. and Jane Duncan Miller cannot possibly be born after the death of their parent plus any period of gestation. Since their parents were lives in being at testator's death they are the measuring lives for the remainder interests to their children who are the complete class of great-grandchildren that testator intended to benefit in this will.

The class of great-grandchildren would close no later than the death of the survivor of the two measuring lives, Edwin Duncan, Jr. and Jane Duncan Miller which is within the perpetuities period. Thus, both minimum and maximum membership would be determined within the period of the rule. However, the class was subject to close and in fact did close (to the exclusion of any children of Edwin Duncan, Jr. and Jane Duncan Miller born after that time) when the first great-grandchild reached age 25. This is true because to be able to determine what is one-half of a distributive share of the remainder which is to be paid to the great-grandchild who has reached age 25, the number of shares into which to divide the remainder must be known.

The great-grandchild who has reached age 25 is entitled to one-half of her remainder interest. As each great-grandchild reaches age 25, he will receive one-half of his remainder interest.

When the youngest great-grandchild reaches age 25 and the grandchildren are deceased, the trust will terminate and final distribution of all remainder interests will occur.

[10]   Section 6 of Article III provides for final distribution when the,

> "youngest of my great-grandchildren shall be 25 years of age, and at that time each great-grandchild *or his or her heirs* shall receive per capita the remainder of the distributive share of my estate in full, and each great-grandchild *or the heir or heirs of any deceased great-grandchild* shall be made equal as to the distributive share of this trust estate." [Emphasis added.]

The words emphasized in the above quotation from section 6 create neither a contingency nor a gift or limitation over. On the death of a remainderman who holds a vested interest in a trust, the interest of that remainderman will pass to his heirs at law since vested estates are inheritable and devisable. *Kale v. Forrest, supra; Jackson v. Langley,* 234 N.C. 243, 66 S.E. 2d 899 (1951); *Allen v. Parker,* 187 N.C. 376, 121 S.E. 665 (1924). The above words in section 6 merely denote the inheritable quality of the vested remainder. *See, Priddy & Co. v. Sanderford, supra.*

[11]   We further note that application of the doctrine of wait and see to this case would mean that there is no perpetuities violation in the gifts to testator's great-grandchildren. This doctrine prescribes, in a case involving a will or testamentary trust, that events will be viewed as they actually happened rather than as they hypothetically could have happened as of testator's death. If no violation in fact occurred, then, under the wait and see approach, there is no perpetuities violation although hypothetically, at the time of testator's death, a violation could have occurred. *Merchants National Bank v. Curtis,* 98 N.H. 225, 97 A. 2d 207 (1953); *Simes & White, supra,* § 1230; Simes, *Law of Future Interests,* pp. 270-75 (2d ed. 1966); *Bergin & Haskell, supra,* p. 218.

In this case, testator's son died on 7 October 1973. Between testator's death on 19 November 1953, and 7 October 1973 testator's son could have had more children. However, he in fact did not have any more children. Thus, the class of great-grandchildren actually includes only children of Edwin Duncan,

Jr. and Jane Duncan Miller who were lives in being at testator's death so that they are the measuring lives for the gifts to their children (testator's great-grandchildren). Due to our holdings above based on our interpretation of what testator intended by his use of the term "great-grandchildren," application of the wait and see doctrine is not necessary to the decision of this case. Therefore, we will have to wait and see in future decisions of this Court, what application, if any, this doctrine will have in North Carolina.

Our holdings above with respect to the various provisions of this testamentary trust in testator's will are in accord with the result reached by the trial judge that this testamentary trust is valid in all respects and contains no perpetuities violations. Therefore, the decision of the trial judge is

Affirmed.